Good morning, your honors. Mike Bresnahan for the appellant, Jonathan Herrera. I'd like to sort of start out by acknowledging that this is not a terribly complex case. There are three issues. Two of them are related, the hearsay issues. I've laid out, as best I can, those arguments, the standard of review and so forth. So what I'd like to do is simply emphasize a few things. The first thing I'd like to emphasize is how hard it is to prove these false statement cases, particularly under 18 U.S.C. section 924, particularly when there isn't a confession and also when there is no evidence or no compelling evidence that the defendant used somebody else's money to purchase the guns. And those are the circumstances of this case, essentially. The government did try to attack this issue of whose money was used and whether Mr. Herrera had the money necessary to buy the guns, and they essentially attacked his defense in a number of different ways. But nevertheless, they had the very difficult task of proving what Mr. Herrera was thinking at the time he purchased these guns. In these kinds of cases, the government has to prove circumstantially, typically, again, without a confession. The purchaser was a straw buyer, and that's sort of a term of art at this point. Somebody who bought something on behalf of somebody else, not somebody who bought a gun, perhaps believing they were going to turn around and sell it to somebody else. And that's the way it is. Well, is there any doubt that Mr. Herrera was buying on behalf of Mr. Fuller? Yes. I think that there's evidence in the record, in the trial record, that he was buying the guns for himself. And I laid out a long list of facts that came out in the trial. The fact that he had no history of criminality, he being Herrera. The fact that he wasn't a target in the larger investigation involving Markecho. He had no prior convictions to our knowledge. In other words, there was no 403, I'm sorry, 404B evidence introduced at trial suggesting he had done this before, introduced to show his state of mind. He was friends with Fuller. In other words, a lot of evidence explaining the circumstances surrounding the purchases. Excuse me, Counselor. In this case, with respect to the guns on the 26th, in your view, when did he then form the intent to sell the guns to Fuller? Didn't he, they left the store and he put them in Fuller's car and that was it? Well, they were driving together. So anything could have happened during that drive from the last of the two stores, I guess three stores on that particular day. And Fuller was with him in the store, correct? Fuller was with him in all three stores the first day on the 26th, only briefly in the last of the three stores. And Fuller paid more than the guns were sold to Herrera for, correct? That is what Herrera testified to at trial. Herrera did make a profit on the guns. And I think that's evidence, some evidence that he purchased them to sell for profit. Now, admittedly, under the circumstances described through the evidence of trial, the State had some evidence to offer to a jury that this was clearly a straw purchase. But there was also evidence, contrary evidence, suggesting that these two were friends, they exchanged guns, they sold guns to each other. There was a period of time between the time they left the third store and the time they reached Herrera's house where they were driving together in the car, could have had a conversation about, you know, what to do with these guns. And presumably it was at that point in time that an agreement was struck between, well, it could be argued that an agreement was struck between Herrera and Fuller, that Fuller would purchase the guns from him. Although the jury heard all that, they heard the evidence and they said to the contrary. Well, they did, but they got a bad jury instruction, too. They got a jury instruction that allowed them to find Herrera guilty, even if they didn't think he was a straw buyer. They were allowed to find him guilty under the judge's jury instruction if all they concluded was that he purchased the guns with the intent, at the time he purchased them, to sell them to a specific third party. And they were allowed to come to that conclusion, even if they didn't have evidence, that Fuller had agreed prior to the purchase that he would be the buyer and that he would be buying on certain terms. Mr. Bresnahan, that instruction was discussed between the counsel for the parties. At first, as I remember the record, defense counsel objected to that instruction. The judge was of the opinion that the instruction helped the defendant. The defense counsel counseled with his client and then agreed with the judge and withdrew his objection. Why isn't this invited error? Judge, the best argument I can make for why this isn't invited error is, first of all, he didn't come up with the instruction. You're right. He did agree with it at some point. But in retrospect, I can't think of a reason. It didn't work out. So he may have regrets to having made the decision that he did. And that may be a ground for some collateral proceedings. Right. But he did agree to the wording of this instruction. Correct. I agree with that. Why isn't that invited error again? I think in this particular case, and there have been other cases where these kinds of things have happened that have come before this Court, if there isn't any rational, strategic reason to do something, in other words, if the defense attorney just blows it and there's just no strategic reason. Well, that's a very good argument on ineffective assistance of counsel under Section 2253. But it's not a very good argument on direct appeal, is it? Well, I agree with the first part. Certainly it's something that you take up on an IOC or ineffective assistance of counsel claim in a habeas proceeding. But I think the decision was so bad that we have to hold the judge somewhat responsible for it as well and call it error, call it plain error, because it clearly did not. We don't get to plain error if it's invited error, do we? Well, again. It's a waiver of the point. And I understand your point, Judge. And I acknowledge it. The best you can do is to call it plain error. I understand that. Right, right. And because it was such a bad call, I think, on the part of both the judge and the defense attorney, that I would urge the Court to consider it as plain error and then go through the analysis to determine whether my client's entitled to relief under Rule 52. But I have to urge the Court to consider how damaging, first of all, the hearsay evidence was that came in. It didn't come in ostensibly as hearsay evidence. It came in as foundational or background information. But then it was used substantively and very effectively in the government's closing argument after the government avowed that it wasn't going to use it for that reason. And unfortunately, I think the defense attorney may have been asleep at the switch during closing argument or maybe preoccupied or something and didn't object and request a limiting instruction at that point. And the judge did not sui sponte offer one. And so probably the toughest part of this case for the government to prove was proven with evidence that they said they weren't going to use in that manner. They expressed they said that. And that's why the judge allowed it in to begin with. The judge should have jumped in at that point and said no. Or, well, the judge should have jumped in and just stopped the proceedings, called counsel to the bench and said I'm going to need to do something here. I'm going to need to give a limiting instruction. He should have given a limiting instruction. Kagan. When the evidence was admitted, that would have been the logical time to, for the defense to have requested a limiting instruction, correct? That would have been the best time, absolutely. And it was so prejudicial in the form in which it came in, even a limiting instruction probably would have been problematic. But it would have been better than nothing. And certainly after closing, it would have helped some perhaps. But the combination of those three errors, I think, rendered the trial fundamentally unfair and the outcome in very serious question. And so we're asking the court to remand for a new trial. Thank you very much. Thank you, counsel. We will hear from the government. May it please the court. Rachel Hernandez on behalf of the United States. Ms. Hernandez. As the court is aware, the defendant, who had no car, was sporadically employed and lived with his parents, paid cash for five guns over the course of two days at three different gun stores. Fuller was at his side during each transaction and drove him from store to store. Fuller took possession of all five guns and paid more than the store sales price minutes after they were purchased. The only explanations given by the defendant that Fuller didn't want to spend the time to fill out the forms himself is not persuasive, since, of course, Is this recitation of facts from you a way of making any error harmless? It's a way of explaining that this is a case of overwhelming evidence, contrary to what defense counsel has just argued. But we have some serious hearsay objections, among other issues in the case. Yes, Your Honor. What did the judge mean when he said it's not going to be used substantively? Does that make any sense to you? I think I look at the language that he used in conjunction with that, that this was merely offered for background. And there is obviously case law from this Court. What is the background use of this statement that we were waiting to fill in an order? Well, the agent said we had a standing order for certain guns, Glocks and AK-style rifles. Clear, clear hearsay when introduced to show that they had the order asserted in the statement, correct? Correct. However, it was not needed for that purpose. What was the relevant purpose for which it was admitted? And did you propose any limiting instruction? Those two questions. The first question, the purpose was to show background on the investigation Who cares about the background? Who cares what the agents were there? This isn't an employment case to see whether they were in the course or scope of employment. What the agents were doing is totally irrelevant to the prosecution. Well, it gives context to how the investigation was started and how it is ended. Who cares about the context? The question was, did this person buy with intent on behalf of someone else? That's right. And where this agent was at the time expecting an order, whether it was true or not that there was an order, is important because that is when he received the two guns that the defendant had purchased in Yuma hours before. All he had to say is I was standing on the street corner when I got the report. He didn't have to say we had a standing order. That's the hearsay statement.  It was improperly admitted. Now the question is, is it harmless error or not? Correct? I would say that it was improperly admitted as non-hearsay as background. That it was not admitted for the truth of the matter asserted. Whether there was in fact a standing order was not the point of that and was, as you say, immaterial to the case. It was merely background on why the agent was there, set up, expecting to receive guns. It's very incriminating background, is it not? Yes. It's also incriminating that the defendant bought two guns and in about the amount of time it takes to drive from Yuma to San Diego, they were in the hands of an informant and being turned back over to ATF. That's the incriminating evidence. The statement we had a standing order which was filled by Fuller, right, is very incriminating as to the defendant. And it was intended to be incriminating and it was intended to be believed, which is the definition of hearsay. Now, tell us why it was harmless. Well, it was harmless because any prejudice resulting from any possible error did not affect the verdict. And that's what I was getting to with my opening remarks. How do we know that? Because the evidence is overwhelming here. The defendant was picked up by Fuller, driven to gun stores, paid cash. He had sporadic employment at best. On October 26th, the two guns he purchased, he carried them from the gun store to Fuller's car, never touched them again. Those two guns, as I said, were in San Diego hours later in the hands of a gun trafficker and then eventually, fortunately, in the hands of ATF. The defendant, by his own admission, as to the gun in Count 5, said that Fuller told him which gun to buy. The defendant also said that Fuller was helping him financially in purchasing these guns, which shows that he knew at the time he was buying them, he was not the actual purchaser. They had an agreement for Fuller to help him financially, which is the only thing that makes any sense when you look at the facts of this case that minutes after these guns are purchased, again, by the defendant's own statement, Fuller paid more than the sales price. And looking at that evidence, in conjunction with his statement that the reason Fuller didn't buy the guns himself was because he didn't want to spend the time, also that Fuller, the defendant claimed that Fuller was an expert on firearms but not their prices, and that this young man who had no particular expertise in guns was more of an expert on prices and a better salesman. So looking at all of that, the evidence in this case was overwhelming, and that is how, to the extent any error is found, I would say that it's harmless. Excuse me, counsel. You indicated earlier that the testimony concerning the order to fill was not offered for the truth of the matter asserted. Is that correct? Yes. Although in your closing argument, you referenced that he, quote, he had an order to fill.  Yes. And so if the earlier testimony was not offered for the truth of the matter asserted, what evidence in the record were you referring to when you said he, quote, he had an order to fill? Well, I would say that given the way that evidence came in, that the prosecutor probably should not have argued it in that fashion, given the fact that it was offered for background. But, again, looking at the reasons I've just given for why any error is harmless, I would say that applies in that situation. Additionally, I'm sorry. So is it fair to say, then, that the government was in error when they argued when the argument was made he had an order to fill? In essence, what the government did was they argued evidence for the truth of the matter asserted that they had represented to the district judge was not being represented for that purpose, but was only being represented for background. Is that fair to say? I would say that the prosecutor inadvertently did make that mistake. And given that, the Court should look at whether the evidence, whether that was harmless. I point to two things. One, the overwhelming evidence, which I've discussed, and the fact that the standard instruction that the comments of lawyers are not evidence and are not to be taken as evidence was given. Also, when the prosecutor made this closing argument, nothing was immediately seen as objectionable. The defendant didn't object. There was no limiting instruction requested. The instructions given were stipulated jury instructions. And as a result, I would say any error from the prosecutor's statement was harmless. Do you wish to address the instructional error claim? Sure. Briefly, the instructions, again, as I said, were stipulated. They were based on this supplemental instruction, rather, was based on jury instructions that were previously given that were stipulated. In regard to this specific question from the jury, the parties agreed on the instruction to give. The defense specifically said, I'll withdraw my objection and appreciate the instructions the court gave, which shows that they affirmatively requested this instruction. And the statement that the court made to the jury in regard to the question that if at the time the person has a present intention to sell the firearm to a specific person is really expounding on the language of 4473, which is on behalf of another person. On behalf of another person is the same as to sell the firearm to a specific person. It may have been an imprecise paraphrasing of 4473, but, again, it was one that was agreed to by the parties and did not prevent the jury from acquitting the defendant because. But if the instruction says that the defendant is guilty if he buys a gun with the specific intent of selling it to someone else, do you think that that's a correct instruction? To a specific other person in the context of this case, I think that's correct. It didn't say in the context of this case. I mean, for instance, Mr. Herrera could have said, I think this is a gun that Fuller would like. Right? And I'll take a speculative risk of buying it in the hopes of reselling it to him for $100. He'd be doing exactly the same thing that gun shows people do all over the country. Right? You wouldn't say that that's a Federal felony, is it? I would agree with that, that in some cases this instruction may be problematic. In the instance of this case and the evidence of this case, it wasn't a question of, oh, he may want this gun. Fuller was standing right next to him. Fuller drove him to these stores. Fuller transported these guns immediately to San Diego. The defendant never possessed them again after he purchased them. Thank you. Thank you, counsel.  Thank you, Your Honor. Mr. Bresnahan, you have less than a minute, if you wish to have rebuttal. Certainly. Your Honors, I would just close with the following thought. The jury asked a very important question for obvious reasons. The jury was not convinced that Herrera was a straw buyer when it asked the question it asked for clarification. At least that would be a reasonable, if not overwhelming inference from the question they asked and the timing and so forth. And I would submit that left with the jury instruction they were given, Herrera did not get a fair trial, assuming, again, we can overcome the problems associated with invited error and so forth. But that was not a proper jury instruction and they could very well have found him guilty of something he wasn't charged with. Thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: Hayes, O'SCANNLAIN, BEA